### Allen, et al. v. Hawk, Trustee, et al.

(Decided November 24, 1922.)

### Appeal from Letcher Circuit Court.

1. Landlord and Tenant—Lease—Options.—Plaintiffs had an option on a leasehold which they assigned to defendants who undertook to dispose of the leasehold if they could within 60 days, and by the terms of their contract were to pay plaintiffs in case of sale $2,000.00 for the lease and retain all over that sum realized from the sale. The contract further provided that if a sale was not made within the specified time, the contract should be void. Not having been able to effect a sale, the defendants, after their contract had expired and the lease by its terms had been forfeited by failure to begin operations thereon, released same upon demand to the landowners. Held, that in so doing they did not so dispose of the lease as to become liable to plaintiffs for the $2,000.00.

2. Landlord and Tenant—Lease—Options.—The option when as-
signed to defendants had but six days to run, and defendants per-
formed the condition necessary to convert the option into a lease
and to give vitality to their contract with plaintiffs for its speci-
fied 60 days' term. Held, that they did not thereby render them-
selves liable to plaintiffs for the $2,000.00 contingent upon their
disposing of the lease within 60 days.

P. T. WHEELER, MORGAN & HARVIE and JOHN D. CARROLL
for appellants.

JOHN M. COOK, STEPHEN COMBS, W. F. HAWK and S. E.
BAKER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On December 18, 1916, the appellees, S. E. Baker
and three others, formed a partnership for the purpose
of buying, selling and leasing real estate. On April 30,
1917, they procured, in the name of S. E. Baker, trus-
tee, from I. N. Lewis, G. M. Adams and S. G. Fairchild
an option for a lease upon several adjoining tracts of
land, which by its terms, if accepted in writing within
fifteen days, thereby became a lease and authorized
them to remove the coal from the land upon the usual
terms, but providing that unless the installation of a
mining plant was begun on the land by June 1, 1917, the
lease should become void.

On May 9, 1917, and before signifying to the lessors
their acceptance thereof, Baker as trustee assigned this
option to appellants, Allen and Wheeler, for the pur-
poses and upon conditions set forth in their written
agreement.

On May 11, 1917, Allen and Wheeler gave written
notice to Adams, Lewis and Fairchild of the assignment
to them of the option by Baker, trustee, and of their
acceptance thereof and assumption of Baker's obliga-
tions thereunder.

There was no effort by any one to erect a mining
plant on the land by June 1, 1917, or at all, and on July
10, 1917, Allen and Wheeler, upon demand of Adams,
Lewis and Fairchild, the lessors, executed and delivered
to them a written instrument reciting:

"That said lease contract and notice of acceptance,
as hereinbefore set out and referred to by each, be and
they are now each and all mutually cancelled, set aside
and held for naught, and are to be of no further force
and effect, and the terms and conditions thereof are for-

ever released unto the party lessors therein, the said Adams, Lewis and Fairchild, and for the purpose of cancellation the aforesaid contracts are referred to and made a part hereof.''

Thereafter appellees (Baker and his associates) instituted this action against appellants (Allen and Wheeler) to recover the sum of $2,000.00 alleged to be due them under and by reason of the terms of the above instruments of writing; and upon a trial after issue joined, the court at the conclusion of the evidence refused to direct a verdict for the defendants and peremptorily instructed the jury to find for the plaintiffs in the sum of $2,000.00. From the judgment entered thereon the defendants have prosecuted this appeal.

There is no dispute about the facts, and the parties agree that the court was right in taking the case from the jury and directing a verdict; hence the only question for decision is whether the court erred in directing a verdict for the plaintiffs rather than for the defendants.

The several written instruments are long and cover matters not involved in this action. We shall therefore copy herein only such portions of same as are necessary for the decision of this controversy, which, in addition to the portion of the cancellation agreement quoted above, is the following paragraph of the original lease from Adams, Lewis and Fairchild to Baker, trustee:

''It is further agreed that the parties of the second part (Baker and his associates) shall in good faith begin the work of putting in the plant contemplated by the parties hereto and shall push same to completion as rapidly as possible, and shall have said plant and development in condition to ship coal therefrom not later than six months from this date, and if for any reason this work is not begun on or before the first day of June, 1917, then this contract of lease shall be null and void and of no effect.''

And these two sections of the contract between Baker and his associates and Allen and Wheeler:

''Whereas, the parties of the second part (Allen and Wheeler) are desirous of *disposing* of said lease contracts to other parties, now in the event the said second parties should *so dispose of* said lease contracts within 60 days, the parties of the first part (Baker, etc.), agree and bind themselves to the parties of the second part, their heirs, assigns or purchasers, to transfer said lease

contract to the parties of the second part upon the payment to them of the sum of $2,000.00.''

And

''It is further understood and agreed by and between the parties hereto that the party of the second part (Allen and Wheeler) are given the exclusive right for the next 60 days to *dispose of* all of the said leases and contracts above mentioned at the prices and terms above set out; and the parties of the first part (Baker, etc.) agree to co-operate and work together with the parties of the second part in bringing about a sale and transfer of the property and property rights, and agree to transfer the said property and property rights upon the payment and conditions as hereinbefore set out, and cause the property to be transferred with covenants of general warranty to any purchaser through the efforts of the second parties within the time herein set out; and agrees that the second parties shall for their services in procuring a purchaser or purchasers receive all over and above the prices herein stipulated; and in the event the second parties shall fail *to dispose of* said property and property rights or any part thereof, then these covenants shall be null and void as to that part not disposed of but binding as to that part disposed of. And the parties of the second part agree to use their best endeavor to dispose of said property and property rights.''

It was the view of the trial court, and this is the principal contention of the appellees, that when on July 10, 1917, the appellants agreed to a cancellation of the original lease and released same to the lessors, they thereby ''disposed of'' the leased premises in the sense contemplated by the use of the words, which we have italicized in the provisions quoted above from the contract between Baker, et al., and appellants.

In support of this contention by appellees, we are referred to the following definition of the words ''dispose of,'' found in vol. 3, Words and Phrases, page 2117:

'' 'Dispose of' as used in a contract by a co-owner of a mine to another co-owner by which the latter is to develop the mine and pay the former the purchase price from the first profits thereof, or that such price should become due and payable if the latter should dispose of or sell the mine, is broader than the term 'sell' and includes leasing the mine for a term of years for a royalty.

(Hill v. Sumner, 10 Sup. Ct. 42, 43; 132 U. S. 118, 33 L. Ed. 284.)''

Manifestly that definition is right under the recited circumstances upon which it was based, but we have no such circumstances here, since appellants neither leased nor sold these coal rights to anyone. It is manifest therefore that even if we ascribe to these words the same meaning here, appellants did not ''dispose of'' the lease so as to render themselves liable to appellees for the $2,000.00 contingent as it is upon their disposing of the lease. But just what the parties meant in this case by the use of the words ''dispose of'' and as a result of which appellants were to become liable for $2,000.00 to appellees, is clearly indicated by the provisions quoted above from their contract, which is that appellants should succeed in ''bringing about a sale and transfer of the property and property rights . . . to any purchaser through the efforts of the second party within the time herein set out.''

This was all that appellants undertook or had the authority to do under the contract, and it was further stipulated that in the event the second party ''shall fail to dispose of said property and property rights, or any part thereof, then these covenants (including the obligation to pay $2,000.00) shall be null and void.''

It is absolutely clear both from the contract and the action of the parties thereunder, that none of them had any intention of complying with the provisions of the original lease by developing the land for coal or installing a plant for that purpose within six months, or beginning to install such a plant on the premises before the first day of June, 1917, which by the express terms of the contract were to be so performed upon penalty of a forfeiture.

The evidence shows without contradiction that appellants made a good faith effort to effect a sale but were unable to do so, in which event by the terms of the contract its obligations, including that to pay $2,000.00 to appellees, became null and void. It therefore seems to us too clear for argument that because of no fault upon the part of the plaintiffs, the conditions were never present upon which their liability for $2,000.00 to appellees was by the parties made to depend.

Since the original lease provided that it was to become null and void in the event that work upon the installation of a mining plant was not begun before the

first day of June, 1917, and that event having happened —as both appellants and appellees knew it would happen unless appellants could before the specified time effect a sale of the lease to a third party—the lease thereby became void, and neither appellants nor appellees could have prevented a formal cancellation thereof. Hence, when upon demand of the lessors appellants consented to a cancellation, they neither "disposed of" the lease as contemplated by their contract with appellees, nor did otherwise than the lessors could have forced them to do with or without the consent of appellees.

It is also urged by appellees—but in this contention there is clearly no merit—that by giving notice to the lessors, after the lease contract had been assigned to them by appellees, of their acceptance of its terms, that they thereby disposed of the leasehold to themselves and became liable to appellees for the $2,000.00.

That this is a mere afterthought is patent from the fact that no such claim was advanced at the time nor while appellants, presumably with appellees' co-operation and assistance which the contract obligated them to give, were attempting to sell the lease within the 60 days allowed them for that purpose and before it expired by its terms.

When the contract was assigned to appellants it was a mere option having but six days to run, and the contract of assignment makes it clear that appellants were not buying the option but were agreeing to sell the lease if they could, and to pay appellees $2,000.00 when and if the lease was transferred to a purchaser procured by them, who would prevent a forfeiture thereof by beginning the installation of a mining plant on the premises before June 1, which appellants never agreed to do and which, as clearly appears, neither they nor appellees ever had any intention of doing.

As the option had but six days to run when assigned to appellants, it was necessarily contemplated that either they or appellees, and it is immaterial which, should give the notice of acceptance to the landowners, without which the option would expire without becoming a lease at all. By giving this notice appellants merely performed a condition necessary to give vitality to their contract with appellees for its specified term of sixty days, and as under that contract they certainly had the right, if indeed it was not their duty to do, without

thereby becoming liable to appellees for $2,000.00, or any sum.

It seems clear to us, therefore, that appellants did not "dispose of" the leasehold in the manner contemplated by their contract with appellees; that the condition upon which they were to pay the $2,000.00 to appelless did not occur, and that the court erred in directing a verdict for appellees and in refusing to direct it for the appellants.

Wherefore, the judgment is reversed and the cause remanded for a new trial consistent herewith.